HENRY HORMAN et al., Respondents, v. WM. G.
CARGILL et al., Appellants.

St. Louis Court of Appeals, April 14, 1903.

Assumpsit: TENANTS FROM YEAR TO YEAR: PURCHASER OF LANDLORD: GROWING CROP OF CLOVER BELONGED TO TENANTS. Plaintiffs as tenants under a verbal lease sued a subquent purchaser of their landlord, Rhodes, owner of the farm, on account, to which a counterclaim was made; one of the items of the counterclaim was the price of a crop of growing clover on the farm, which defendants claimed that plaintiffs as tenants under a verbal lease had no right to recover: *Held*, that plaintiffs were tenants of the premises from year to year and were entitled to sixty days' notice to terminate the tenancy, and the crop of clover by virtue of their lease belonged to them and they had a right to sell it.

Appeal from Cape Girardeau Circuit Court.—*Hon.
H. C. Riley,* Judge.

AFFIRMED.

*Edw. D. Hays* for appellants.

(1) The court erred in refusing instruction No. 5 asked by defendants. R. S. 1899, sec. 3418. Plaintiffs occupied the land under a five-year verbal lease from Rhodes. The land was conveyed from Rhodes to O'Toole and from O'Toole to defendants. The clover crop was not reserved to plaintiffs. Defendants were the owners of the clover. That portion of plaintiff's demand relating to clover is $100. The jury should have been instructed to disregard that portion of plaintiffs' demand ($100) which relates to the clover crop. (2) Instructions numbered 3, 4 and 5 should have been given, for the reason that defendants were entitled to a clear and distinct statement of the different grounds upon which they could recover. Hesse v. Powell, 29 Mo. App. 411.

*John A. Snider* for respondents.

(1) When the trial court has given instructions that fully and clearly declare the law governing every issue in the case, it is not error to refuse others of the same meaning and import. State v. Easton, 138 Mo. 103; Ern v. Rubenstein, 72 Mo. App. 337; West v. West, 144 Mo. 119. (2) The contract of Harmons with Rhodes was a tenancy from year to year, and sixty days' notice was required to terminate same. R. S. 1899, sec. 4109; 78 Mo. 344; 41 Mo. App. 317; 65 Mo. App. 258.

GOODE, J.—Assumpsit to recover the purchase money of seventy-five acres of growing wheat, thirty acres of growing clover, twenty-two hogs, and various farming implements, stated to have been sold by the plaintiffs to the defendants for prices aggregating $790, on which credits are allowed to the amount of $300, leaving $490 unpaid, for which judgment is prayed.

The answer admits the purchase of sixty-eight acres of wheat for $135.39, denies the purchase of any clover and disputes several other items of plaintiffs' account. It is alleged the defendants only got twenty hogs instead of twenty-two, three two-horse plows instead of six, no one-horse plow, though they are charged on plaintiffs' account with six, no cider mill and no corn drill. The total amount of the prices of the property defendants admit buying from the plaintiffs, defendants state to be $435.28, on which they claim to have paid $300 and to owe $135.28.

Defendants set up by way of counterclaim that the plaintiffs are indebted to them for the rent of six houses during different months between March 10, 1900, and September 20th, in the sum of $138.32, leaving a net balance due defendants by the plaintiffs of $3.04, for which judgment is prayed.

A replication was filed denying all the allegations of the answer.

For some years prior to April, 1901, the plaintiffs had been the tenants of Victor E. Rhodes, on a farm owned by the latter in Cape Girardeau county. Their tenancy ran from year to year, they delivering to Rhodes as rent one-third of the grain raised, but none of the clover, all of which they were allowed to keep. In the fall of 1900, plaintiffs had put in their crops as usual, and in the ensuing spring were preparing to plant corn. Early in the spring Rhodes sold the farm to a man by the name of O'Toole, and about the first of April O'Toole sold it to the defendants who lived in Illinois. About the middle of April the defendants made a contract with the plaintiffs for the purchase of the growing crops, plaintiff's farming machinery and hogs, for $800. Subsequently it was agreed that plaintiffs might keep out a wagon, ten dollars being deducted from the aggregate price of the articles, leaving $790 to be paid. This sum did not represent a round price for all the property purchased by the defendants, but the total of different prices agreed on for various articles. Defendants paid one hundred dollars in cash and were to execute notes for the balance; and so far there is no dispute about the facts. The notes were never given, but payments were made from time to time and finally plaintiffs brought this suit to recover the balance due on the account.

The contention of the defendants is that they were only to turn over the notes to the plaintiffs in case all the property sold was delivered, and that a portion of it was never delivered, and on account of plaintiffs' failure to make a complete delivery a new agreement was made by which plaintiffs relinquished their claim to the notes and stipulated other prices for the property delivered, which prices conform to the account as stated in defendants' answer.

Plaintiffs, on the other hand, contend that the prop-

erty was all delivered; that some of the plows and other articles were in odd nooks on the farm but defendants knew where they were and could get them at any time.

Another position taken by the defendants is, that in the deed from Rhodes to O'Toole and the one from O'Toole to them, the growing clover was not excepted from the force of the conveyances and, hence, they acquired title to it by virtue of their deed instead of by purchase from the plaintiffs. Defendants also contend that the plaintiffs occupied certain tenant houses on the farm after they had surrendered possession of the farm to the defendants, and that rent for those houses is due; but plaintiffs testified that they were to use those houses during the time they occupied them, rent free.

It will be seen from the foregoing statement that this case presents a conflict of evidence as to what the actual facts were, and we may say that the chief point made on this appeal is that the verdict was against the weight of the evidence.

The defendants, however, insist that the plaintiffs were mere occupants of the farm at will, as they were tenants under a verbal lease, and, hence, have no right to recover for the thirty acres of growing clover. In truth, plaintiffs were tenants of the premises from year to year and were entitled to sixty days' notice before the end of any year in order to terminate the tenancy against their will. R. S. 1899, sec. 4109. By virtue of the terms of their contract with Rhodes, their landlord, they owned the crop of clover and had a perfect right to sell it to defendants, who purchased the premises with full knowledge of the terms on which plaintiffs held. The main object defendants had in view in buying plaintiffs' crops and farming implements was to get possession in the spring of 1901, as plaintiffs could hold the farm during that year and were ready to put in a crop of corn.

We have examined several points made for reversal by defendants' counsel and find they are wholly with-

out merit.   The court in appropriate instructions told the jury to allow the defendants credit for any articles sold by the plaintiffs which were not delivered in good condition; further, that if the jury believed any of the articles sold were not delivered to the defendants at all, the jury should deduct from their award of damages the prices of such articles; and again, if they believed the clover did not belong to the plaintiffs but was purchased by the defendants from the owner of the land it was growing on, they should deduct the price of the clover.   This last charge was in defendant's favor but was unwarranted by the evidence, which showed the clover belonged to no one but the plaintiffs.   The other charges were as full and fair as the defendants could ask, and none was given at the instance of the plaintiffs.

The weight of the testimony and the justice of the case are altogether with the plaintiffs, so the judgment is affirmed.   *Bland, P. J.,* and *Reyburn, J.,* concur.